[Cite as *State v. Matthews*, 2012-Ohio-1894.]


IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  1-11-39

     v.

ROBERT L. MATTHEWS,          O P I N I O N

     DEFENDANT-APPELLANT.


STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  1-11-40

     v.

ROBERT L. MATTHEWS,          O P I N I O N

     DEFENDANT-APPELLANT.


STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  1-11-41

     v.

ROBERT L. MATTHEWS,          O P I N I O N

     DEFENDANT-APPELLANT.

**Appeals from Allen County Common Pleas Court
Trial Court Nos. CR2005 0412, CR2006 0056 and CR2005 0330**

**Judgments Affirmed**

**Date of Decision:   April 30, 2012**

**APPEARANCES:**

    *Michael J. Short*  **for Appellant**

    *Juergen Waldick*  **for Appellee**

**SHAW, P.J.**

    **{¶1}** Defendant-appellant, Robert L. Matthews ("Matthews"), appeals the January 31, 2011 judgment of the Allen County Court of Common Pleas overruling his pre-sentence motion to withdraw his guilty pleas.

    **{¶2}** This consolidated appeal arises from three separate cases, which were handled together at the trial court level.

    **{¶3}** On September 15, 2005, in case number CR2005 0412, Matthews was indicted on the following charges, which were alleged to have occurred on various dates in May and June of 2005.   Count One of the indictment alleged that

Matthews did knowingly sell or offer to sell crack cocaine, a Schedule II controlled substance, in violation of R.C. 2925.03(A),(C)(4)(a), a felony of the fifth degree. Count Two of the indictment alleged that Matthews did knowingly sell or offer to sell crack cocaine, a Schedule II controlled substance, in violation of R.C. 2925.03(A),(C)(4)(a), a felony of the fifth degree. Count Three of the indictment alleged that Matthews did knowingly sell or offer to sell crack cocaine, a Scheduled II controlled substance, in violation of R.C. 2925.03(A),(C)(4)(a), a felony of the fifth degree. Count Four of the indictment alleged that Matthews did knowingly sell or offer to sell marijuana, a Schedule I controlled substance, in violation of R.C. 2925.03(A),(C)(3)(a), a felony of the fifth degree. Count Five of the indictment alleged that Matthews did knowingly sell or offer to sell crack cocaine, a Schedule II controlled substance, in violation of R.C. 2925.03(A),(C)(4)(e), a felony of the second degree.

{¶4} The charges stemmed from a series of controlled purchase operations conducted by the Lima Police Department's P.A.C.E. unit involving Matthews and a confidential informant, during which Matthews on three occasions sold crack cocaine to the confidential informant ranging in amounts from 0.23 grams to 0.28 grams, one occasion during which Matthews sold 115.7 grams of marijuana to the confidential informant, and one occasion during which Matthews sold 11.5 grams of crack cocaine to the confidential informant.

{¶5} On September 15, 2005, in case number CR2005 0330, Matthews was indicted on the following charges, which were alleged to have occurred on July 5, 2005. Count One of the indictment alleged that Matthews did knowingly sell or offer to sell cocaine, a Schedule II controlled substance, in violation of R.C. 2925.03(A),(C)(4)(c), a felony of the fourth degree. Count Two of the indictment alleged that Matthews did knowingly possess crack cocaine, a Schedule II controlled substance, in violation of R.C. 2925.11(A),(C)(4)(e), a felony of the first degree. Count Three of the indictment alleged that Matthews did knowingly possess cocaine, a Scheduled II controlled substance, in violation of R.C. 2925.11(A),(C)(4)(b), a felony of the fourth degree.

{¶6} The charges stemmed from a controlled purchase operation conducted by the West Central Ohio Crime Task Force involving Matthews and a confidential informant, during which Matthews sold the confidential informant 4.78 grams of cocaine for $800.00. Shortly after the controlled purchase operation, the West Central Ohio Crime Task Force executed a search warrant at Matthews' residence finding 5.75 grams of cocaine and 48.76 grams of crack cocaine in the kitchen.

{¶7} On March 16, 2006, in case number CR2006 0056, Matthews was indicted on the following charges, which were alleged to have occurred on February 3, 2006. Count One of the indictment alleged that Matthews did

knowingly sell or offer to sell crack cocaine, a Schedule II controlled substance, with said transaction taking place in the vicinity of a school, in violation of R.C. 2925.03(A),(C)(4)(b), a felony of the fourth degree. Count Two of the indictment alleged that Matthews knowingly permitted his vehicle to be used for the commission of a felony drug abuse offense, that drug abuse offense being corrupting another with drugs or trafficking, in violation of R.C. 2925.13(A),(C)(3), a felony of the fifth degree. Count Three of the indictment alleged that Matthews did knowingly possess crack cocaine, a Schedule II controlled substance, in violation of R.C. 2925.11(A),(C)(4)(a), a felony of the fifth degree.

{¶8} The charges stemmed from another controlled purchase operation conducted by the West Central Ohio Crime Task Force, during which Matthews sold 0.75 grams of crack cocaine to a confidential informant, with the transaction taking place approximately 710 feet from the location of Liberty Elementary School in Lima, Ohio. At the time of the transaction, Matthews was driving his 1988 Ford Bronco. After the operation was complete, law enforcement pursued Matthews in his vehicle. Matthews continued to drive his vehicle and threw a plastic baggie from the driver's side window. The baggie was recovered by law enforcement and crack cocaine was found inside. Once Matthews' vehicle was

stopped and searched by law enforcement, another rock of crack cocaine weighing 0.17 grams was found on the driver's side floor.

{¶9} Matthews subsequently pled not guilty to all the charges listed in each of the three indictments. The cases proceeded to the discovery and pre-trial phases, and were scheduled to be tried together.

{¶10} On July 7, 2006, the trial court ordered the revocation of Matthews' bond and electronic surveillance, and issued a bench warrant for Matthews' arrest. The trial court's order was based upon information it received that Matthews had violated the conditions of his electronic surveillance by absconding.

{¶11} Matthews did not again appear in court in the three cases until October 25, 2010, when he waived his right to a speedy trial. On November 18, 2010, Matthews appeared for a pre-trial hearing where he entered negotiated pleas of guilty to all the charges listed in each of the three indictments in exchange for a stipulated ten-year prison sentence.

{¶12} On December 3, 2010, Matthews filed a pre-sentence motion to withdraw the guilty pleas he previously entered in each of the three cases. Matthews fired his attorney after the pre-sentence motion to withdraw his guilty pleas was filed.

{¶13} On December 23, 2010, Matthews' new counsel filed a notice of appearance.

{¶14} On January 5, 2011, the trial court issued a judgment entry in all three cases ordering Matthews to be released from the custody of the Allen County Jail in order to be placed on a medical furlough due to some medical concerns which required hospitalization.

{¶15} On January 27, 2011, Matthews and his new counsel appeared for a hearing on Matthews' pre-sentence motion to withdraw his guilty pleas. At the hearing, Matthews and his sister testified in support of Matthews' motion.

{¶16} On January 31, 2011, the trial court overruled Matthews' pre-sentence motion to withdraw his guilty pleas. The trial court scheduled sentencing to take place on February 18, 2011.

{¶17} On March 7, 2011, the trial court ordered a bench warrant be issued for Matthews' arrest. The trial court specified that Matthews had violated the terms of his bond by failing to appear for sentencing.

{¶18} On July 19, 2011, Matthews appeared for sentencing and the trial court imposed the following aggregate ten-year prison sentence.

{¶19} In case number *CR2005 0412*, the trial court ordered Matthews to serve one year in prison on Count One, a fifth degree felony trafficking in crack cocaine offense; one year in prison on Count Two, a fifth degree felony trafficking in crack cocaine offense; one year in prison on Count Three, a fifth degree felony trafficking in crack cocaine offense; one year in prison on Count Four, a fifth

degree trafficking in marijuana offense; and five years in prison on Count Five, a second degree trafficking in crack cocaine offense. The trial court noted that the prison term imposed on Count Five is a mandatory term, whereas the prison terms imposed on Counts One thru Four are not mandatory. *The trial court ordered the prison terms in CR2005 0412 be served concurrent to one another, for a total five-year prison term, but consecutive to the prison terms in case number CR2005 0330.*

{¶20} In case number *CR2005 0330*, the trial court ordered Matthews to serve one year in prison on Count One, a fourth degree felony trafficking in cocaine offense; five years in prison on Count Two, a first degree felony possession of crack cocaine offense; and one year in prison on Count Three, a fourth degree felony possession of cocaine offense. The trial court noted that the prison term imposed on Count Two is a mandatory prison term, whereas the prison terms imposed on Counts One and Three are not mandatory. *The trial court ordered that the prison terms imposed for CR2005 0330 be served concurrent to one another, for a total five-year prison term, but consecutive to the prison terms imposed for CR2005 0412.*

{¶21} Finally, in case number *CR2006 0056*, the trial court ordered Matthews to serve a one year prison term on Count One, a fourth degree felony trafficking in crack cocaine offense; a one year prison term on Count Two, a fifth

degree felony permitting drug abuse offense; and a one year prison term on Count Three, a fifth degree felony possession of crack cocaine offense. The trial court noted that all of the prison terms imposed on Counts One thru Three are non-mandatory terms. *The trial court ordered the prison terms in CR2006 0056 to be served concurrent to one another and to also run concurrent to the prison terms imposed in CR2005 0412 and in CR2005 0330.*

{¶22} Matthews subsequently filed this appeal, asserting the following assignment of error.

> **THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S PRE-SENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA WITHOUT A HEARING.**

{¶23} In his sole assignment of error, Matthews contends that the trial court erred in overruling his pre-sentence motion to withdraw his guilty pleas. We also note that Matthews erroneously states in his assignment of error that he was not granted a hearing on his motion to withdraw his guilty pleas.

{¶24} On January 27, 2011, Matthews appeared in court for the hearing on his motion to withdraw his guilty pleas. At this hearing, Matthews was represented by different counsel than the one who represented him at the change of plea hearing. As previously mentioned, Matthews and his sister testified at this hearing in support of Matthews' motion.

{¶25} Matthews testified that, prior to the change of plea hearing, his previous attorney told Matthews that he did not like the plea bargain, but advised Matthews to plead guilty to the charges in the indictment in exchange for the stipulated ten-year sentence. Matthews claimed that his then-attorney told him that after Matthews entered his guilty pleas, he would "litigate" to get Matthews a three to five year sentence, and that Matthews would then also be eligible for judicial release. At the hearing on his motion to withdraw his guilty pleas, Matthews maintained that he did not commit the majority of the offenses listed in the indictments. Matthews testified that he only pled guilty to the charges because his attorney at the time assured him that he would only have to serve three to five years of the ten-year sentence.

{¶26} Matthews explained that he did not feel right after the change of plea hearing and called his attorney that day to file a motion to withdraw his guilty pleas. Matthews also claimed that his attorney had stopped "fighting" for his case and told him that there was little chance of winning his case because Matthews was facing so many charges.

{¶27} On cross-examination, Matthews recalled the Crim.R. 11 colloquy conducted by the trial court. Matthews remembered acknowledging on the record that he understood that by pleading guilty he was admitting to committing the offenses alleged in the indictments. Matthews also recalled the trial court

engaging in a lengthy dialogue with him about the stipulated ten-year sentence—specifically, that some of the charges in the indictments carried a mandatory prison term, which would mean that Matthews would have to serve those entire terms before he was eligible for judicial release. Matthews further admitted that he told the trial court on the record that no one had made him any promises in exchange for him pleading guilty to the charges. However, Matthews contended that he hesitated prior to giving his answer, but that his attorney tapped his knee underneath the table, prompting him to affirm that no one had made him any promises in exchange for his guilty pleas.

{¶28} Matthews' sister testified that she spoke to Matthews' attorney at the courthouse prior to the change of plea hearing. She testified that Matthews' attorney told her that Matthews would only have to serve three to five years of the ten-year sentence. However, she admitted that she was not present during any of Matthews' conversations with his attorney regarding the decision to agree to the plea bargain.

{¶29} Rule 32.1 of the Ohio Rules of Criminal Procedure provides that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Generally, a motion to withdraw a guilty plea that is filed prior to sentencing will

be freely allowed. *State v. Drake*, 73 Ohio App.3d 640, (1991); *State v. Thomas*, 3d Dist. No. 1–08–36, 2008–Ohio–6067, ¶ 6.

**{¶30}** However, this does not mean that a motion to withdraw a guilty plea will be granted automatically. *Drake*, at 645. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie*, 62 Ohio St.3d 521, at paragraph one of the syllabus (1992). It is within the sound discretion of the trial court to determine whether there is a legitimate and reasonable basis for the withdrawal of a guilty plea and, absent an abuse of discretion, the trial court's decision on the matter must be affirmed. *Id*. at 527. An abuse of discretion is more than an error of judgment; it implies that the decision was "unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶31}** Ohio Appellate Courts consider several factors when reviewing a trial court's decision to grant or deny a defendant's pre-sentence motion to withdraw a plea, including: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable;

(7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. *State v. Lane*, 3d Dist. No. 1–10–10, 2010–Ohio–4819, ¶ 21, citing *State v. Griffin*, 141 Ohio App.3d 551, 554 (2001).

{¶32} In the instant case, the trial court addressed each of these factors in its decision to overrule Matthews' motion to withdraw his guilty pleas. The trial court noted that at the change of plea hearing, Matthews stated on the record that he understood the nature of the charges against him, that he did not have to plead guilty, and that if he pled guilty he was admitting to all the charges. Matthews' affirmation on record that he understood each of these things is supported by the transcript from the change of plea hearing. The trial court also asked Matthews several times if he understood that he was stipulating to a ten-year sentence. Matthews was very clear on the record that he understood he was agreeing to a ten-year sentence. Moreover, the trial court noted that Matthews indicated on the record that he had plenty of time to consider the plea bargain with his attorney and that no promises were made to him in exchange for his guilty pleas.

> **Trial Court: Okay. Had plenty of time to talk to the attorney about all these cases?**
>
> **Matthews: Yes, sir.**

> **Trial Court: Have any promises been made by anybody that we haven't put on the record yet to get you to plead?**
>
> **Matthews: No, sir.**
>
> **Trial Court: Have any threats been made upon you to force you to plead against your will?**
>
> **Matthews: No, sir.**
>
> **Trial Court: You feel like you're being coerced into this? Your arm being twisted and that you don't have a choice?**
>
> **Matthews: No, sir.**
>
> **Trial Court: And you understand you do have a choice, you can go to trial. Understood?**
>
> **Matthews: Yes, sir.**
>
> **Trial Court: Okay. You feel like you're being tricked somehow?**
>
> **Matthews: No, sir.**

(Nov. 18, 2010 Hrg. at 28-29).

{¶33} It is also evident from the transcript of the change of plea hearing that the trial court took extreme care in explaining to Matthews the potential sentences he faced if he pled guilty to the charges in the indictments. This was primarily due to the fact that Matthews was entering guilty pleas in three different cases, with three different indictments, each listing offenses that carried both mandatory and non-mandatory prison terms. The trial court explained to Matthews that at the very least Matthews would have to serve a three-year

mandatory term with the remaining seven years being a non-mandatory term. However, the trial court also explained the possibility of Matthews being sentenced to two, five-year mandatory prison terms, which meant that Matthews would have to serve all ten years with no possibility for judicial release.

**{¶34}** The trial court also repeatedly tried to impress upon Matthews that even though he was pleading guilty in exchange for a stipulated ten-year sentence, the trial court was not a party to that agreement and could still give Matthews more than a ten-year sentence. The following is an excerpt from the change of plea hearing.

> **Trial Court:  What I'm basically telling you, is I'm the judge and I have to make the decision, and I'm not bound by the stipulation.  The prosecutor's bound by it; she can't ask for more.  And by your agreement you're bound by it; you're telling the prosecutor, *"I'm not gonna seek less than ten years.  I'm agreeing to ten years."*  That's what the stipulation is, that you are—I'm speaking for you, but it's ultimately my decision.**

> **Matthews:  Right, I understand.**

(Nov. 18, 2010 Hrg. at 8) (emphasis added).

**{¶35}** The trial court also noted the prejudice to the prosecution if Matthews' motion were to be granted.  The charges in the indictment occurred in 2005 and in the early part of 2006.  Matthews absconded in July 2006 and was not arrested until October 2010.  Thus, over four years had transpired with no progress in Matthews' cases.  Moreover, in the interim, one of the four confidential

informants used in the controlled purchase operations involving Matthews had died. Notably, Matthews was made aware of this fact at the change of plea hearing in November of 2010 when he decided to enter his guilty pleas. In addition, the trial court noted that, despite his contentions, the record supported that Matthews was competently represented by his counsel at the change of plea hearing. Prior to agreeing to the plea bargain, Matthews faced a possible twenty-eight and a half years in prison if he was convicted of all the charges pending against him. The trial court highlighted the fact that Matthews' attorney was able to negotiate a ten-year stipulated sentence with the prosecution, giving Matthews an obvious benefit of the bargain. The trial court concluded that each of these things weighed heavily against granting Matthews' motion to withdraw his guilty pleas.

{¶36} The trial court also gave Matthews ample opportunity to present evidence in support of his motion to withdraw his guilty pleas. Nevertheless, Matthews chose to only offer his own self-serving testimony and the testimony of his sister, who admitted to not being present when Matthews had conversations about the plea bargain with his attorney. Thus, none of the testimony presented at the hearing corroborated Matthews' claims that his attorney's private representations regarding a three to five year sentence induced him into entering his guilty pleas in these cases. Moreover, the trial court was entitled to weigh the

credibility of Matthews' testimony and was free to disbelieve all or none Matthews' contentions.

**{¶37}** In sum, the record in this case demonstrates that the trial court carefully considered all the applicable factors and the competing interests implicated in allowing Matthews to withdraw his guilty pleas. The record also supports the trial court's findings with regard to those factors and its ultimate conclusion that Matthews failed to demonstrate a legitimate and reasonable basis for withdrawal of his guilty pleas. Accordingly, we find no abuse of the trial court's discretion in its decision to deny Matthews' motion to withdraw his guilty pleas.

**{¶38}** For all these reasons, Matthews' assignment of error is overruled and the judgments are affirmed.

*Judgments Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**